* * * * * * * * * * *
The Full Commission reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Decision and Order, except for minor modifications. Accordingly, the Full Commission affirms the Decision and Order of Deputy Commissioner Glenn with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as: *Page 2 
 STIPULATIONS
1. All the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Tort Claims Act.
2. The issues to be determined from this hearing are as follows:
 a) Whether plaintiff was injured as a result of the negligence of defendant;
 b) Did plaintiff, by her own negligence, contribute to her own injuries; and
 c) What amount, if any, damages should plaintiff recover from defendant as a direct result of the injuries she sustained from the motor vehicle accident of July 16, 2001 which was caused by the negligence of defendant's employee.
3. The parties stipulated into evidence at the hearing the following:
 a) Deposition of Marcus D. Hammonds;
 b) Deposition of Dr. Douglas M. Burch;
 c) Plaintiff's exhibits as set out in Attachment A of the pre-trial agreement; and
 d) Aeriel map of the road on which the accident happened.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 41 years of age at the time of the hearing before the Deputy Commissioner. She completed high school and two years of post high school education. As of *Page 3 
July 16, 2001, plaintiff worked for Carolina Apparel Group as a sewer earning $6.62 per hour and normally working a 40-hour work week.
2. Plaintiff was married with two children, one of which was a minor.
3. On July 16, 2001, plaintiff left her home to go to work at approximately 7 a.m. and headed north on RP 1733. As she traveled on RP 1733, plaintiff did not see any roadwork or any signs that had been placed there to give notice of any roadwork.
4. Plaintiff left work at approximately noon that day because she did not have any other work and needed to go to the post office. After leaving the post office, plaintiff crossed highway 74 and onto RP 1733 headed south towards her home. When plaintiff crossed highway 74 onto RP 1733 she did not see any signs that indicated that the North Carolina Department of Transportation, hereinafter DOT, was repaving RP 1733 south of highway 74.
5. Ray Randall, testifying for the defendant, stated that he worked for DOT. Mr. Randall was working on RP 1733 at the time of plaintiff's accident and testified that he knew of the safety requirements that were to be used when repaving roadways such as RP 1733.
6. Mr. Randall indicated that the DOT placed three different required signs at each end of the work-zone to indicate to the traveling public that road construction was underway ahead. The three required signs indicated: (1) that there was road construction ahead; (2) that one of the lanes was closed ahead; and (3) that there was a flagman directing traffic ahead. He further stated that these signs were placed 1/10th of a mile between each other and prior to the actual work-zone. There were no signs regarding the loose gravel on the roadway.
7. Mr. Randall indicated that, at the time plaintiff was traveling south on RP 1733, he and the other members of the crew, including the flagman, were on lunch break and not on the roadway. *Page 4 
8. There were no signs in place when plaintiff crossed highway 74 to warn her that there was loose gravel on the roadway. As plaintiff proceeded south on highway 74, she entered the work-zone of the repaving work. As she entered the work-zone, she lost control of her automobile, crossed the centerline and ran into the ditch and embankment. As a direct result of this accident, plaintiff sustained personal injury and damage to the automobile she was operating.
9. Mr. and Mrs. David Liles were proceeding north on RP 1733 just as plaintiff was entering the work-zone and saw plaintiff's car go out of control, cross the centerline and come to rest in the ditch. Mr. Liles got out of his vehicle after calling 911 and approached plaintiff's vehicle. He told plaintiff not to move and that help was on the way after she told him that she was hurt. Mr. and Mrs. Liles did not see any signs that had been placed on RP 1733 giving warning of roadwork as they traveled RP 1733.
10. Plaintiff lost control of her automobile when she hit the loose gravel that had been placed on the roadway by DOT employees, including Mr. Randall, as they were repaving RP 1733. Plaintiff had no warning that she was about to come in contact with the loose gravel as she headed south on RP 1733. Just prior to the accident, plaintiff was traveling at approximately 35 mph and the speed limit for that area was 55 mph.
11. Shortly after the accident, Mr. Randall was made aware of plaintiff's accident, which was just up the road from where he and other members of the road crew were taking their lunch break. Neither he nor anybody else from the crew went to the scene, but he did contact his supervisor to inform him that there had been an automobile accident in their work-zone.
12. Plaintiff was taken by ambulance from the accident scene to Anson Community Hospital where she was treated and released. Plaintiff was also told to go either to her doctor or to a chiropractor for the treatment of her injuries. *Page 5 
13. When plaintiff was released from the hospital, her doctor's office had closed for the day so she went to the office of chiropractor Dr. Douglas Burch, where she was seen and treated for her injuries.
14. Dr. Burch diagnosed plaintiff's condition as traumatic injury to her neck, mid back and lower back. Dr. Burch treated her with different forms of chiropractic treatment. Plaintiff improved after receiving these treatments and after being taken out of work from July 16, 2001, through August 8, 2001. Plaintiff returned to work at her regular job and has continued to work since her release. However, plaintiff has continued to have periodic problems with her back and neck after working and is not able to do all the things she was able to do prior to her accident, such as cleaning her home and working in the yard with her flowers.
15. Dr. Burch indicated that plaintiff would benefit from chiropractic treatment maybe once or twice per month into the future to relieve the occasional pains plaintiff now experiences as a result of her injuries from the accident.
16. Dr. David Arpin, a chiropractor, was called as an expert witness by the defendant. Dr. Arpin performed a review of plaintiff's records, including her testimony, but did not examine plaintiff. Dr. Arpin disagreed with Dr. Burch as to the injuries plaintiff sustained as a result of the automobile accident and with the treatment that was required to treat plaintiff's condition. The Full Commission gives greater weight to the testimony of Dr. Burch, as opposed to Dr. Arpin, regarding the plaintiff's injuries and treatment because Dr. Burch was plaintiff's treating chiropractor.
17. As a result of the injuries plaintiff sustained in the automobile accident, plaintiff missed 53.67 hours from work that resulted in lost wages of $355.30. *Page 6 
18. As a result of her injuries from the automobile accident, plaintiff incurred medical expenses as a result of her seeking and receiving medical treatment as follows:
 a) Anson Rescue Squad: $270.00;
 b) Anson Community Hospital: $769.00;
 c) Carolinas Emergency Physicians: $222.00;
 d) Charlotte Radiology: $157.00;
 e) Burch Chiropractic Center: $4,033.00; and
 f) mileage for treatment: $234.00.
Thus, the Full Commission finds plaintiff's total medical expenses to be $5,685.00.
19. As a result of the accident, plaintiff sustained property damages in the amount of $1,214.27, of which plaintiff paid $337.11 with the balance being paid by plaintiff's automobile insurance carrier.
20. The Full Commission finds that plaintiff also sustained pain and suffering as a result of her injuries from the automobile accident of July 16, 2001, for which she is entitled to recover in the reasonable amount of $15,082.59.
21. There is insufficient evidence of record upon which to find that plaintiff was contributorily negligent in this matter. Moreover, the record shows that the plaintiff was traveling well below the posted speed limit at the time the accident occurred.
 * * * * * * * * * * * CONCLUSIONS OF LAW
1. Under the Tort Claims Acts, negligence is determined by the same rules applicable to private parties. Bolkhir v. N.C. State Univ.,321 N.C. 706, 709 (1998). Plaintiff must show: (1) that defendant owed plaintiff a duty of care under the *Page 7 
circumstances; (2) that the actions or omissions by at least one of the named employees of defendant constituted a breach of that duty; (3) that the breach was the actual and proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages. Davidson v. University of NorthCarolina at Chapel Hill, 142 N.C. 544, 543 S.E.2d 920 (2001).
2. In the present case, Mr. Randall (defendant's agent) had a duty of care to properly warn motorists of the loose gravel present in the road work zone on RP 1733 in Anson County, North Carolina. Defendant's agent breached his duty of care to plaintiff by not properly warning motorists of the loose gravel present in the road work zone on RP 1733. This breach of duty proximately caused plaintiff to suffer a motor vehicle accident in which plaintiff sustained injuries to her neck, mid and lower back. As a result of her injuries, plaintiff sought and received medical treatment. The medical treatment was reasonable and necessary, and was the proximate result of her injuries. Plaintiff has shown that the damages she sustained were the proximate result of a negligent act of defendant. N.C. Gen. Stat. § 143-291.
3. The evidence of record fails to establish that plaintiff was contributorily negligent. N.C. Gen. Stat. § 143-291 et seq.
4. Plaintiff is entitled to recover the fair and reasonable damages she has sustained as a result of the negligence of defendant. Plaintiff has incurred $5,685.00 in medical bills, $377.11 in property damages and $355.30 in lost wages, for a total of $6,417.41. Plaintiff also sustained pain and suffering as a result of her injuries from the automobile accident of July 16, 2001, for which she is entitled to recover in the reasonable amount of $15,082.59. N.C. Gen. Stat. § 143-291 et seq.
 * * * * * * * * * * * *Page 8 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff shall recover the fair and reasonable damages she has sustained as a result of the negligence of defendant. Plaintiff has incurred $5,685.00 in medical bills, $377.11 in property damages, and $355.30 in lost wages, for a total of $6,417.41. In addition, plaintiff sustained pain and suffering as a result of her injuries from the automobile accident of July 16, 2001, for which she is entitled to recover in the reasonable amount of $15,082.59. Thus, it is hereby ORDERED that defendant shall pay to plaintiff total damages in the amount of $21,500.00.
2. Defendant shall pay the costs of this action.
This 28th day of September 2007.
S/______________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ DANNY LEE McDONALD COMMISSIONER
 S/______________________ PAMELA T. YOUNG CHAIR *Page 1